Filed 3/29/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZACHARY WEIR,<br><br>    Defendant and Appellant. | D073626<br><br><br>(Super. Ct. Nos. SCD273683 &<br>SCD259797) |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia Meza, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Allison Acosta and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

After a jury trial, defendant Zachary Weir was convicted of four counts of felony possession of personal identifying information (Pen. Code, § 530.5, subds. (c)(1) &

(c)(2)).[1]  On appeal, Weir contends that his felony convictions should have been classified as misdemeanors under Proposition 47's enactment of section 490.2 defining petty theft.[2]

The issue of which offenses are and are not subject to reclassification under Proposition 47 is currently a matter of debate in our courts, as evidenced by the number of such cases pending review in our high court.  (See *People v. Sanders* (2018) 22 Cal.App.5th 397, rev. granted July 25, 2018, S248775 (*Sanders*); *People v. Jimenez* (2018) 22 Cal.App.5th 1282, rev. granted July 25, 2018, S249397 (*Jimenez*); *People v. Brayton* (2018) 25 Cal.App.5th 734, rev. granted Oct. 10, 2018, S251122 (*Brayton*).)  This case requires us to interpret section 530.5, subdivision (c) (section 530.5(c)) and determine whether a conviction under subsections (1) and (2) of this subdivision should be reduced to a misdemeanor under section 490.2's petty theft provision.  As we explain, we conclude section 530.5(c) is not subject to reclassification under Proposition 47 because section 490.2 only reclassifies theft offenses, a violation of section 530.5(c) is a nontheft offense, and to conclude otherwise would be contrary to Proposition 47's intent.

---

[1]     Subsequent statutory references are to the Penal Code unless otherwise specified.

[2]     Weir also filed a petition for a writ of habeas corpus asserting that he qualifies for pretrial diversion pursuant to section 1001.36, which was enacted in 2018.  Because we conclude that this statute applies retroactively, we are separately issuing an order to show cause concurrent with this opinion that is made returnable before the Superior Court of San Diego County to determine in the first instance whether he qualifies for diversion under section 1001.36.  (See, e.g. *In re M.S.* (Mar. 11, 2019, B280998) __ Cal.App.5th __.)

FACTUAL AND PROCEDURAL BACKGROUND

This appeal follows a trial involving four counts of possession of personal identifying information (§ 530.5(c)(1)) that also served as an evidentiary hearing on a probation matter involving possession of a weapon at a penal institution (§ 4502, subd. (a)).

While in custody for unrelated charges, Weir was found in possession of an object that could be used as a weapon. The San Diego District Attorney filed an information charging him with possession of a weapon at a penal institution (§ 4502, subd. (a)). Weir pleaded guilty to the offense and was placed on probation in March 2016.

In September 2017, police officers stopped Weir for smoking on the boardwalk and riding a bicycle without lights. Officers conducted a valid search and found inside his backpack an accordion folder containing the identifying information of four individuals, including identification cards, a AAA card, a bank deposit record with an account number, a social security card, military records, and medical records. Weir was arrested and his probation summarily revoked.

The San Diego District Attorney filed an information charging Weir with four felony counts of obtaining personal identifying information with intent to defraud (§ 530.5(c)(1)), each with allegations of a prior conviction for a similar offense (§ 530.5(c)(2)). A jury convicted Weir on all four counts. The court sentenced him to a total of five years eight months in county jail, comprised of the four counts of possession of personal identifying information, one count of possession of a weapon at a penal institution, and two prior prison enhancements.

3

Weir contends that because no evidence was presented regarding whether the value of the personal identifying information in his possession exceeded $950, his convictions under section 530.5(c)(1) and (c)(2) should be reduced to misdemeanor convictions under section 490.2's petty theft provision. As we will explain, offenses under section 530.5 are not theft offenses and do not fall within the scope of section 490.2. Weir's felony convictions are therefore ineligible for reclassification as misdemeanor petty theft.

Because the facts are not in dispute, our task is to determine whether Proposition 47 applies to a conviction under section 530.5(c)(1) and (c)(2). This presents a pure question of law, subject to de novo review. (*People v. Bush* (2016) 245 Cal.App.4th 992, 1003.) The court's role in interpreting a statute is "to ascertain the Legislature's intent so as to effectuate the purpose of the law." (*People v. Barba* (2012) 211 Cal.App.4th 214, 222 (*Barba*).)

We begin with the plain language of the statute, then look to the statute's purpose, legislative history, public policy, and statutory scheme to " ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' " (*Barba*, *supra*, 211 Cal.App.4th at p. 222.) The same principles of statutory construction are applied when interpreting a voter initiative. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276).

4

# I

## *Proposition 47's Purpose and Scope*

"Approved by the voters in 2014, Proposition 47 (the 'Safe Neighborhoods and Schools Act') reduced the punishment for certain theft- and drug-related offenses, making them punishable as misdemeanors rather than felonies.  To that end, Proposition 47 amended or added several statutory provisions, including new . . . section 490.2, which provides that 'obtaining any property by theft' is petty theft and is to be punished as a misdemeanor if the value of the property taken is $950 or less."  (*People v. Page* (2017) 3 Cal.5th 1175, 1179 (*Page*).)

Section 490.2, subdivision (a) provides:

> "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290."

Proposition 47's addition of section 490.2 specifically reduced punishment for the "category of theft crimes . . . that could previously be 'charged as grand theft' simply because 'the crime involves the theft of certain property' " by creating a $950 threshold regardless of the type of property involved.  (*People v. Romanowski* (2017) 2 Cal.5th 903, 910 (*Romanowski*), citing Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35 (Voter Information Guide).)  This section

5

was added to target certain "nonserious and nonviolent property and drug offenses": grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession. (*Ibid.*) By requiring misdemeanors for these types of crimes, Proposition 47 intended to focus prison spending on serious and violent offenses and redirect savings to provide crime prevention and support services in schools, trauma services for victims of crime, and mental health and substance abuse treatment for those already in the justice system. (Voter Information Guide, *supra*, text of Prop. 47, § 2, at p. 70.)

II

*California Penal Code Section 530.5 is a Nontheft Offense*

We must decide whether a violation of section 530.5(c)(1) and (c)(2) is considered "obtaining any property by theft" and would constitute petty theft under section 490.2. Section 530.5(c) reads:

> "(1) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment.

> "(2) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and who has previously been convicted of a violation of this section, upon conviction therefor shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170.

6

"(3) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of 10 or more other persons is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170."

Subdivision (a) of this statute also proscribes *use* of personal identifying information for "any unlawful purpose."  "Personal identifying information" is defined in section 530.55, subdivision (b), and encompasses any "name, address, telephone number, health insurance number, taxpayer identification number . . . checking account number, PIN (personal identification number) or password, alien registration number, government passport number, date of birth, unique biometric data . . . credit card number of an individual person, or an equivalent form of identification."

Although a violation of section 530.5 is commonly referred to as identity theft, the plain language of the statute designates a violation of this section a nontheft offense.[3] The statute prohibits a person from acquiring, retaining, or using information, rather than taking it, an indicator that the Legislature was concerned with possession or use rather than with theft.[4] Moreover, a violation of section 530.5 does not require the offender to

---

[3]    "[U]se of the shorthand term 'identity theft' to describe the offense made punishable in section 530.5 does not provide a reason to read into the statute an additional element that cannot be found by referring to the language of the statute." (*Barba*, *supra*, 211 Cal.App.4th at p. 227.)

[4]    The only language indicating a theft requirement appears in section 530.5, subdivision (e), which reads, "Every person who commits mail theft, as defined in Section 1708 of Title 18 of the United States Code, is guilty of a public offense. . . ." This statute is titled "Theft or receipt of stolen mail matter generally" and distinguishes

take or possess another's *property*; it simply proscribes that person from retaining

*information.* It also lacks a numerical threshold distinguishing misdemeanor from felony

offenses, unlike many theft statutes that distinguish between grand and petty theft. (See,

e.g., §§ 486–488.) Finally, section 530.5 also does not explicitly categorize the crime as

theft or grand theft, defining the crime instead as a "public offense."

Although the plain language of the statute is clear, we turn to additional tools of

statutory construction for further guidance. (*Lungren v. Deukmejian* (1988) 45 Cal.3d

727, 735 ["[T]he 'plain meaning' rule does not prohibit a court from determining whether

the literal meaning of a measure comports with its purpose or whether such a construction

of one provision is consistent with other provisions of the statute"].)

First, we note that section 530.5 is outside of the statutory scheme governing theft

offenses; the statute instead resides in the chapter of the Penal Code titled "False

Personation and Cheats." (See *People v. Truong* (2017) 10 Cal.App.5th 551, 561–562

[noting that a violation of section 530.5 is not a theft offense and that the Legislature did

not categorize it as such].)

Second, the history of the statute sheds light on its purpose and public policy.

Section 530.5 was initially enacted as part of a bill reforming credit reporting agency

practices and retail credit approval requirements to prevent consumers from opening

fraudulent credit accounts in another person's name. (Sen. Com. on Pub. Safety, Analysis

---

between the theft offense ("steals, takes, or abstracts, or by fraud or deception obtains")
and the nontheft offense ("buys, receives, conceals, or unlawfully has in his possession").
In this way, section 530.5(c) is more akin to the receipt of stolen mail, the nontheft form
of the federal offense.

of Assem. Bill No. 156 (1997–1998 Reg. Sess.) as amended July 3, 1997, § 3.) The creation of a new crime under section 530.5 was considered necessary to provide a previously unavailable remedy for the victim whose credit has been damaged. (*Id.* at § 4.) Therefore, the purpose of the statute is to remedy harm to the victim whose identity has been misused rather than to punish the theft of property.[5]

In 2002, the Legislature amended section 530.5, adding what has now become subdivision (c)(1) to punish not just the use of personal identifying information, but also its acquisition with intent to defraud. (Stats. 2002, ch. 254, §1.) As originally amended, retaining or acquiring possession of personal identifying information was a misdemeanor. (Stats. 2002, ch. 254, §1, Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Sen. Bill No. 1254 (2001–2002 Reg. Sess.) as amended June 28, 2002, pp. 2–3.) In 2006, the Legislature again amended section 530.5 to add what is now subdivision (c)(2), making the offense a wobbler if the offender has been convicted of a prior violation of

---

5      We note that *Romanowski* rejected a contention that section 484e was ineligible for resentencing because of its special protection of consumers. (*Romanowski*, *supra*, 2 Cal.5th at p. 913.) We, however, are not asserting that section 530.5 has special significance due to the class of victims it protects; rather, we conclude that the extent of harm this section is designed to prevent is distinct from that caused by theft. Further, *Romanowski* analogizes a reclassification of a violation of section 484e to a violation of section 473, which allows reclassification of forgery convictions as misdemeanors under the $950 threshold. (*Romanowski*, at p. 913.) In making this point, the *Romanowski* court would not be able to conclude that forgery is comparable to possession of personal identifying information because section 473 explicitly distinguishes between the two. (§ 473, subd. (b) ["This subdivision shall not be applicable to any person who is convicted both of forgery and of identity theft, as defined in Section 530.5."].)

9

the statute.  (Stats. 2006, ch. 522, §2.)  The 2006 amendment also criminalized the sale, transfer, or conveyance of personal identifying information and mail theft.  (*Ibid.*)

The Legislature's purpose in enacting both amendments was to provide additional protection for victims due to their limited ability to prevent the use of their personal information and the extent of the harm that results when their information is used.  (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 1254 (2001–2002 Reg. Sess.) as amended March 11, 2002, pp. 7–8 (Analysis of Sen. Bill No. 1254); Assembly Committee on Pub. Safety, Analysis of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) as introduced Feb. 24, 2006, p. 4.)  Legislators recognized the victims' unique harm:  "Victims cannot easily change their name, birth date, social security number or address, and they should not have to do so."  (Analysis of Sen. Bill No. 1254, *supra,* at p. 8.)  The Legislature's continued expansion of the crime shows that the felony hinged on the seriousness of the crime and of its consequences, rather than on the type or value of property involved as is the case in section 490.2.

The crime of having or using personal identifying information of another person under section 530.5 is therefore distinguishable from the separate crime of stealing property under some other provision proscribing theft.  Each involves a distinct victim and a distinct goal; section 530.5, as noted, protects the person whose *information* was

obtained rather than the person whose *property* was taken.[6] The perpetrator need not even be in possession of *property* that contains personal identifying information; he or she can violate section 530.5(c) by simply retaining the *information* (by memory or otherwise) and intending to use, or actually using, it to defraud the person whom it identifies.[7]

This distinction convinces us that the offense in section 530.5(c) is punishable because of the particular nature and effect of the crime—potential harm that far exceeds the value of any property obtained by the subsequent misuse of the information, rather

---

[6] The Senate Committee noted: "[A]ll existing related crimes, such as grand theft (Penal Code Section 484), fraudulent use of access cards (Penal Code Sections 484d-484i) and using another person's identification in a financial statement (Penal Code Section 532) are crimes against parties other than the person whose identity has been used; the victims are credit card companies, retailers, banks, and others. Thus, existing law does not provide any remedy for the real victim: the person whose credit has been damaged or ruined." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 156 (1997–1998 Reg. Sess.) as amended July 3, 1997.)

[7] In support of the additional crime of possession of personal identifying information, the United States Secret Service argued that "[s]uspects can avoid being charged with mail theft or receiving stolen property by simply recording the victims' identifiers and disposing of the source documents." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 1254 (2001–2002 Reg. Sess.) as amended Mar. 11, 2002, p. 16.)

than the comparatively isolated consequences associated with petty theft.[8]  An offense

under section 530.5 "is an essentially unique crime, not simply a form of grand theft. . . .

[¶]  Grand theft is typically a discrete event, not a crime that creates ripples of harm to the

victim that flow from the initial misappropriation."  (Sen. Com. on Pub. Safety, Analysis

of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) as amended May 26, 2006, p. P.)[9]  In

---

[8]      The court in *People v. Soto* (2018) 23 Cal.App.5th 813, 822 (*Soto*) addressed the ineligibility of aggravated forms of theft for reclassification under Proposition 47.  In *Soto*, the court refused to reclassify theft from an elder victim (§ 368, subd. (d)) under section 490.2 because it was a "theft-plus" offense that required the additional necessary elements that the victim be an elder or dependent adult and the defendant knew or reasonably should have known that fact.  (*Soto*, at pp. 823–824.)  In reaching its decision, the *Soto* court noted section 490.2 does not automatically extend to "any course of conduct that happens to include obtaining property by theft worth less than $950."  (*Soto*, at p. 822.)  *Soto*, however, did not decide whether a violation of section 530.5 would amount to a theft offense.  (*Soto*, at p. 823.)  Even if we were to conclude that section 530.5(c) was a theft offense, the additional "intent to defraud" element of this subdivision evinces the Legislative intent that it is a more aggravated form of theft and thus, would still be ineligible for reclassification under Proposition 47.  (See *Soto*, at p. 824.)

[9]      The court in *People v. Valenzuela* (2012) 205 Cal.App.4th 800, 808 (*Valenzuela*), cited the same committee report in concluding that a violation of 530.5(c)(1) is a "unique theft crime" rather than a possession crime.  *Valenzuela* relied on the statute's distinction between acquiring or retaining personal identifying information in subdivision (c), on the one hand, and selling, conveying, or transferring that information in subdivision (d), on the other, in concluding that the former is not a possession offense.  (*Valenzuela*, at pp. 807–808.)  We are unpersuaded by *Valenzuela* because, in our view, it ignores the plain language of subdivision (c):  the offense described therein deals with the "possession of . . . personal identifying information" rather than with the taking of the same, and is therefore a nontheft offense, as we have noted.  Indeed, there is no requirement in section (c) that the offender even obtain the information unlawfully (i.e., by theft).  (See Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 245 (2001–2002 Reg. Sess.) as amended May 1, 2001, at p. 9 [giving an example of a receptionist who obtains information lawfully (i.e., with a person's authorization), only to later use such information unlawfully, which unlawful use would nonetheless constitute a violation of section 530.5].)

12

this way, possession of another person's identifying information is a "greater evil" than petty theft, similar to the greater harm posed by crimes of conspiracy. (*People v. Segura* (2015) 239 Cal.App.4th 1282, 1284.)

III

*Section 530.5 is not Eligible for Resentencing Under Proposition 47*

A. <u>Proposition 47 as Applied by the California Supreme Court</u>

Our high court has interpreted the scope of Proposition 47's shoplifting and petty theft provisions; it held that a felony burglary conviction for cashing stolen checks worth less than $950 required resentencing as a misdemeanor under Proposition 47's enactment of section 459.5 defining shoplifting.[10] (*People v. Gonzales* (2017) 2 Cal.5th 858, 862 (*Gonzales*).)

---

[10] Section 459.5, subdivision (a), defines the crime of shoplifting as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." *Gonzales* in dicta suggested that the defendant also could not be charged with felony burglary under the theory that he entered with the intent to commit identity theft, because subdivision (b) of this statute "prohibits alternate charging and ensures only misdemeanor treatment for the underlying described conduct . . . if the property intended to be stolen is the same property at issue in the shoplifting charge." (*Gonzales*, *supra*, 2 Cal.5th 858 at p. 876.) *Gonzales* is not controlling here, as defendant Weir did not use the personal identifying information he had obtained to steal any property, and he was not charged with a separate theft offense. Therefore, his offense was not eligible for resentencing under section 459.5, subdivision (a) as misdemeanor shoplifting, as was the case of the defendant in *Gonzales*.

13

Our high court in *Romanowski* subsequently held that theft of access card information under section 484e qualified for misdemeanor treatment under section 490.2. (*Romanowski*, *supra*, 2 Cal.5th at pp. 905–906.)  The court in *Romanowski* reasoned a violation of section 484e was a theft crime because the statute defines the crime as "grand theft" and is placed in the chapter of the Penal Code titled "Larceny." (*Romanowski*, at p. 908.)  Because section 490.2 applied to the category of theft crimes that could previously be charged as grand theft due to the type of property involved, the *Romanowksi* court concluded this statute's reference to " 'any . . . provision of law defining grand theft' encompass[es] theft of access card information." (*Romanowski*, at p. 910.)

Romanowski is not controlling in the instant case.  Unlike *Romanowski*, which involved a crime explicitly categorized as grand theft and which clearly falls within section 490.2 subdivision (a)'s reclassification of "any other provision of law defining grand theft," section 530.5(c) is not defined as grand theft, does not constitute a theft offense, and is found in the False Personation and Cheats chapter, as opposed to the Larceny chapter where section 484e is located.  Finally, the breadth of information at stake in section 530.5 is much greater than that in section 484e.  Section 530.55's definition of "personal identifying information," as applied to section 530.5, encompasses an expansive list amounting to much more than just access card information as addressed

in section 484e, making an offense under 530.5 much more serious than an offense under section 484e.[11]

Our high court in *Page* addressed whether a violation of Vehicle Code section 10851 was eligible for resentencing under Proposition 47.[12] (*Page*, *supra*, 3 Cal.5th at pp. 1179–1180.) *Page* reiterated the rule that section 490.2 is not confined to offenses designated as grand theft but includes other theft offenses as well. (*Page*, at p. 1186.) *Page* distinguished between the theft form and nontheft form of Vehicle Code section 10851: taking the vehicle with the intent to permanently deprive the owner of possession would be a theft crime, but posttheft driving of the vehicle or taking the vehicle with the intent to deprive the owner only temporarily of possession would not constitute theft. (*Page*, at p. 1183.) The court held that Proposition 47's enactment of section 490.2 covered the theft form of the offense. (*Page*, at p. 1183.)

---

11      In dicta, the *Romanowski* court hinted that a defendant who was voluntarily entrusted with another's access card information and subsequently retained possession of that information without the cardholder's consent and with the intent to defraud would be guilty of embezzlement, a theft crime under section 484. (*Romanowski*, *supra*, 2 Cal.5th at p. 912 [quoting section 484: " 'Every person . . . who shall fraudulently appropriate property which has been entrusted to him or her . . . is guilty of theft' "].) Because defendant Weir in the instant case was not entrusted with the personal identifying information he retained, the categorization of his crime as embezzlement is not at issue here.

12      Vehicle Code section 10851, subdivision (a) reads in part: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense."

15

*Page* supports our interpretation of section 490.2. *Page*'s reclassification of vehicle theft under Vehicle code section 10851 is unsurprising given section 490.2's express reference to section 487's definition of grand theft, which includes vehicle theft under subdivision (d)(1). In making its determination, *Page* made sure to distinguish between the theft form and nontheft forms of the statute and implied that the nontheft forms of the statute would not be eligible for reclassification under Proposition 47. (*Page*, *supra*, 3 Cal.5th at p. 1187 [noting a "violation of Vehicle Code section 10851 is therefore eligible for resentencing . . . if the vehicle was worth $950 or less and the sentence was imposed *for the theft of the vehicle*"] (italics added).) We conclude that possession of personal identifying information under section 530.5(c) is akin to the posttheft driving of the vehicle mentioned in *Page*, as both offenses do not require the offender to steal the property or information from its owner; instead, they punish the subsequent act of driving the vehicle, as mentioned in *Page*, or of retaining personal identifying information, as in the instant case. Therefore, *Page* supports our conclusion that Weir's nontheft offense under section 530.5(c) is ineligible for Proposition 47 reclassification.

Weir nonetheless relies on *Page*, arguing that the prosecution's theory that he possessed the personal identifying information to commit theft makes the convictions eligible for reclassification. Although it is not entirely clear, it appears Weir is arguing that *Page's* distinction between the theft and nontheft forms of a Vehicle Code section 10851 offense are analogous to two separate theories proceeding under section 530.5— one theory being that the offender possessed the information with the intent to commit

16

fraud or theft, and the other being that the offender did not possess the information for either of those purposes. We find this argument unavailing. Unlike the statute at issue in *Page*, section 530.5(c)(1) and (c)(2) do not contain both a theft and nontheft offense. Rather, the "intent to defraud" is an element of the nontheft offense, so the prosecution *had* to proceed on a fraud theory to convict Weir of the offense. Therefore, proceeding on this theory does not turn the convictions into theft offenses and does not make them eligible for misdemeanor resentencing.

B. <u>Treatment of Section 530.5 and Proposition 47 by Other Courts</u>

The issue of whether a violation of section 530.5, subdivision (a) (530.5(a)) is eligible for reclassification under Proposition 47 is currently pending before our high court.[13] (See *Jimenez*, *supra*, 22 Cal.App.5th 1282, rev. granted [reclassifying a section 530.5(a) offense as a misdemeanor under section 459.5]; *Sanders*, *supra*, 22 Cal.App.5th 397, rev. granted [finding a violation of section 530.5(a) a nontheft offense and ineligible for reclassification under 490.2]; *Brayton*, *supra*, 25 Cal.App.5th 734, rev. granted [reclassifying a section 530.5(a) offense as a misdemeanor under section 459.5].)

---

[13] Section 530.5(a) partly reads: "Every person who willfully obtains personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense."

*Jimenez* involved a defendant who entered a check-cashing business and cashed two checks in his name, neither of which were issued to him. (*Jimenez*, *supra*, 22 Cal.App.5th at pp. 1285–1286, rev. granted.) He was convicted of two felony violations of section 530.5(a). (*Id.* at p. 1286.) Relying on *Gonzales*, the court in *Jimenez* concluded that the convictions were properly reduced to misdemeanor shoplifting offenses under Proposition 47's enactment of section 459.5. (*Id.* at p. 1285.) *Jimenez* did not address whether the same offense would constitute petty theft under section 490.2. (*Id.* at p. 1293, fn. 6.) Because Jimenez addresses section 530.5 and reclassification under section 459.5, its holding is inapposite here.

The issue in *Sanders* is more analogous to the instant case. The defendant in *Sanders* was convicted of two burglary violations of section 459 as well as two felony violations of section 530.5(a). (*Sanders*, *supra*, 22 Cal.App.5th at p. 399, rev. granted.) This court concluded that the burglary convictions were properly reclassified under section 459.5 as shoplifting offenses, but that the nontheft offenses under section 530.5 were ineligible for reclassification under section 490.2. (*Id.* at pp. 405–406.) For the reasons stated above, we agree with *Sanders'* characterization of section 530.5.

18

The only case to address an offense under 530.5(c) is *People v. Liu* (2018) 21 Cal.App.5th 143, 152, review granted on other grounds (*Liu*). The court in *Liu* concluded that a subsection (c)(3) offense was a nontheft offense. Unlike other offenses that fall within the scope of Proposition 47 and section 490.2, the *Liu* court found that section 530.5 "is not defined as grand theft, and does not proscribe 'obtaining property by theft.' " (*Liu*, at p. 152.) "By its plain terms, section 530.5 addresses harms much broader than theft." (*Ibid.*) Therefore, the *Liu* court was "not persuaded that section 530.5 defines a 'nonserious' crime within the meaning of Proposition 47, given the far-reaching effects of the misuse of a victim's personal identifying information." (*Id.* at p. 153.)

We find meaningful guidance from *Sanders* and *Liu* and refuse to classify section 530.5 as a nonserious theft crime within the meaning of Proposition 47. (*Sanders*, *supra*, 22 Cal.App.5th at p. 406, rev. granted; *Liu*, *supra*, 21 Cal.App.5th at p. 153.) Our analysis of the statute's plain language and purpose leads us to conclude that section 530.5 describes a nontheft offense. A violation of that section is therefore ineligible for reclassification as petty theft under section 490.2.

Our conclusion is further supported by Proposition 47's amendment of section 473. Proposition 47 added section 473, subdivision (b) to allow misdemeanor treatment of a forgery offense with a value of $950 or less, with the qualifier that "[t]his subdivision shall not be applicable to any person who is convicted both of forgery and of identity theft, as defined in Section 530.5." This provision further illustrates that section 530.5 is regarded as a serious crime that falls outside the scope of Proposition 47's reclassification scheme.

19

Reclassifying section 530.5 nontheft offenses as misdemeanors regardless of the nonmonetary ramifications would be contrary to Proposition 47's intent. Pending further guidance from our Supreme Court, we are hesitant to take such an expansive view of section 490.2 as to allow this reclassification. The Legislature clearly can amend either statute if it disagrees with our interpretation, but as an intermediate Court of Appeal, we refuse to usurp the role of the Legislature by rewriting statutes. (*People v. Bunn* (2002) 27 Cal.4th 1, 14–15.)

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.

20